UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

**SHELBY HAMMER, et al.,**
    *Plaintiffs*,

v.    Case No. 7:23-CV-0158-JKP

**LAURA NODOLF, et al.,**
    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss (ECF No. 95) filed by Defendant Rosemary Sharp. Pursuant to Fed. R. Civ. P. 12(b)(6), she seeks to dismiss the claims asserted against her as barred by the applicable statute of limitations. With Plaintiffs' response (ECF No. 103) and Sharp's reply brief (ECF No. 107), the motion is ripe for ruling. For the reasons that follow, the Court grants the motion.

### I. BACKGROUND[1]

This is a federal civil rights case stemming from a February 25, 2022 arrest of Plaintiffs Shelby Hammer, Adrianne Clifton, Todd Freese, and Chrystal Myers. While Plaintiffs make multiple allegations, the underlying premise of their claims is that defendants violated their constitutional rights by arresting and indicting them without probable cause or a proper investigation.

Plaintiffs commenced this action by filing a civil complaint on October 12, 2023. *See* ECF No. 1. The original complaint mentioned Sharp eight times but Plaintiffs did not name her as a defendant. *See id*. ¶¶ 57, 132, 165. Plaintiffs even described Sharp as a co-conspirator. *See id*. ¶ 132. The original complaint contains no allegations that raise any basis for tolling the applicable statute of limitations.

---

[1] The operative pleading, as supplemented by matters properly considered by the Court, provides the background facts, which the Court views in the light most favorable to Plaintiffs as required under Fed. R. Civ. P. 12(b)(6).

Plaintiffs thereafter twice amended the complaint without naming Sharp as a defendant while keeping the same three paragraphs, albeit renumbered. *See* ECF No. 29 ¶¶ 54, 130, 163; ECF No. 44 ¶¶ 55, 131, 188. Plaintiffs named Sharp as a defendant in their Third Amended Complaint (ECF No. 92), filed on June 10, 2025, after the Court granted their motion for leave to amend (ECF No. 76) filed on March 26, 2025. This latest amendment mentions Sharp fifty-six times and asserts a Fourth Amendment false arrest claim and a conspiracy claim against her under 42 U.S.C. § 1983. *See*, *generally*, ECF No. 92. Although this amendment indicates that Plaintiffs received discovery indicating that relevant recordings exist and that Defendant Alonzo had testified at the underlying criminal trial that she did not recall recordings of discussions with district attorneys, *see id.* ¶ 141, this amendment also fails to raise any basis for tolling the limitations period.

All original defendants opposed Plaintiffs' motion to file a third amended complaint. *See* ECF Nos. 81 (Defendant Midland County); 83 (Defendant Laura Nodolf); 84 (Defendants City of Midland and Jennie Alonzo). The latter defendants opposed leave to amend on grounds that the newly asserted claims against Sharp are barred by the applicable limitations. *See* ECF No. 84 ¶¶ 4–5, 13–20. After holding a hearing, the Magistrate Judge granted Plaintiffs leave to file the most recent amendment. *See* ECF No. 91. Newly named Defendant Sharp responded with the instant motion to dismiss. *See* ECF No. 95. The motion is ready for ruling.

## II. APPLICABLE LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted). "And despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) has the burden to show that dismissal is warranted." *C.M. v. United States*, 672 F. Supp. 3d 288, 353 (W.D. Tex. 2023).

An asserted defense may support dismissal under Rule 12(b)(6) when the operative pleading conclusively establishes the defense because all relevant facts are within the record and are uncontroverted, admitted, or otherwise conclusively established. *Pie Dev., LLC v. Pie Carrier Holdings, Inc.*, 128 F.4th 657, 661–62 (5th Cir. 2025) (per curiam) (addressing res judicata defense); *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (addressing statute of limitations defense). Although parties may raise defenses through a motion to dismiss under Rule 12(b)(6), the courts view them through the standards applicable to such motions. *See Kansa*, 20 F.3d at 1366. This includes viewing the alleged facts in the light most favorable to plaintiffs. *See id*.

### III. STATUTE OF LIMITATIONS

Defendant Sharp seeks to dismiss the claims against her as barred by the applicable statute of limitations. ECF No. 95 ¶¶ 1, 7–21. She argues that Plaintiffs knew their claimed injury and her identity well before March 26, 2023, two years prior to their motion to amend to add her as a defendant. *Id*. ¶ 9. A defendant moving for dismissal on grounds of an affirmative defense, such as the statute of limitations, bears the burden to establish the defense. *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 200 (5th Cir. 2021); *Harrison v.*

3

*Thompson*, 447 F.2d 459, 460 (5th Cir. 1971) (per curiam).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (en banc); *accord Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025). But such dismissal is inappropriate when "there are issues of material fact as to when the plaintiffs knew or should have known" that they were injured. *Frame*, 657 F.3d at 240. Asserting "the limitations defense in a motion to dismiss may easily be premature because facts tolling the running of the statute do not necessarily appear in the complaint." *Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002). As "an affirmative defense and not a pleading requirement," the limitations defense is often "an issue that must be resolved through discovery and summary judgment or trial." *Frame*, 657 F.3d at 240. This is especially so given the factual issues normally associated with a limitations defense and given the deference conferred to allegations of the pleadings. *Id*. Consequently, "[a]s a general rule," such a defense is "normally an issue that must be resolved through discovery and summary judgment." *L.B. Benon Fam. Ltd. P'ship v. N.F. Mgt., Inc.*, No. SA-21-CV-01115-XR, 2024 WL 3836759, at *4 (W.D. Tex. Aug. 15, 2024). Still, the defense may be asserted through Rule 12(b)(6), and "[a]s when deciding any other motion on the pleadings," the Fifth Circuit "will remand if the plaintiff has pleaded facts that justify equitable tolling." *Teemac*, 298 F.3d at 456.

Plaintiffs contest the motion on procedural, as well as substantive grounds. *See* ECF No. 103 at 1–14. Procedurally, they contend that, by granting leave to amend, the Magistrate Judge already ruled against the arguments raised by Sharp. *Id*. at 1–2. Substantively, they contend that they lacked knowledge of Sharp's central role thereby delaying the accrual of the claims against her and invoking the federal discovery rule as to receipt of information as to their injury and

4

permitting their amendment to relate back to the date of their original complaint through Fed. R. Civ. P. 15(c). *Id*. at 2–14. They assert no other basis to toll the statute of limitations. Even though the defendant has the burden to establish limitations as a defense, Plaintiffs have "the burden to demonstrate that an amended complaint relates back under Rule 15(c)." *Al-Dahir v. FBI*, 454 F. App'x 238, 242 (5th Cir. 2011) (per curiam).

The Court first considers the argument that the Magistrate Judge already rejected the arguments presented in Sharp's motion when leave was granted to file the amendment. However, such rejection is not necessarily the case, even when futility of amendment is asserted considering the different standards for granting leave to amend and considering a Rule 12(b)(6) motion to dismiss. Sometimes an amendment may be warranted even if a claim is later subject to dismissal under Rule 12(b)(6). The Court will not rely on the granting of leave to summarily deny the instant motion to dismiss.

Substantively, Plaintiffs argue that they were unaware of several key facts until late 2024 at the earliest. ECF No. 103 at 2. They contend that they lacked information directly implicating Sharp until just before moving for leave to file their Third Amended Complaint. *Id*. at 3. They maintain that Sharp's motion rests entirely upon easily disproved mischaracterization of what they knew. *Id*.

The instant motion raises multiple interrelated issues as to whether the claims asserted against Sharp are subject to dismissal. Because Sharp seeks dismissal under Rule 12(b)(6), the first matter to be addressed is whether the face of the operative pleading conclusively establishes the limitations defense. Whether the amended pleading relates back to the date Plaintiffs filed their original complaint is a separate matter that is essentially irrelevant on a Rule 12(b)(6) motion unless the amendment conclusively establishes that the asserted claims are untimely.

Whether a pleading conclusively establishes a limitations defense requires courts to

consider the length of the applicable statute of limitations, the accrual date, and whether any tolling principle may apply. When considering the conclusiveness of the operative complaint, Plaintiffs need not disprove the characterization of what they knew. Instead, courts accept the truth of all well-pled facts and construe all reasonable inferences in the light most favorable to the pleading party. When knowledge is an element as it is for determining the accrual date of a statute of limitations, courts may properly look to prior pleadings if an early pleading contains allegations that establish knowledge at a particular time.

For claims asserted under 42 U.S.C. § 1983, courts "must borrow the relevant state's statute of limitations for personal injury actions." *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). Under Texas law, "the applicable limitations period is two years." *Id*. "Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues 'is a question of federal law,' 'conforming in general to common-law tort principles.'" *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). The moment of accrual "is presumptively when the plaintiff has a complete and present cause of action, though the answer is not always so simple." *Id*. (cleaned up).

The Fifth Circuit has long held that "the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (quoting *Russell v. Bd. of Tr.*, 968 F.2d 489, 493 (5th Cir. 1992), which in turn quotes *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)). In other words, "a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Jenkins*, 151 F.4th at 747 (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)). "As a result, the limitations period begins 'when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury.'" *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (quoting

6

*Gartrell*, 981 F.2d at 257).

More precisely, the limitations period "begins the moment 'the plaintiff is *or should be* aware of the causal connection between his injury and the acts of the defendant.'" *Jenkins*, 151 F.4th at 748 (quoting *Stewart v. Par. of Jefferson*, 951 F.2d 681, 684 (5th Cir. 1992)). Plaintiffs "need not have actual knowledge of every fact necessary to file suit, and [they] need not know that [they have] a legal claim." *Id*. They "need know only the facts that would ultimately support a claim or be aware of circumstances that would lead a reasonable person to investigate further." *Id*. (cleaned up). They need not "know the identity of each defendant before a cause of action may accrue against that defendant," because they are not required to have "actual knowledge of the causal connection between an injury and the acts of the defendants." *Id*. at 748 n.11. Accrual only requires that the plaintiff "should be aware of the causal connection between [the] injury and the acts of the defendant." *Id*. (quoting *Stewart*, 951 F.2d at 684).

In the § 1983 context, the "accrual analysis begins with identifying the specific constitutional right alleged to have been infringed." *McDonough*, 588 U.S. at 115 (cleaned up). "In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 370 (2017).

As it pertains to Sharp, the operative complaint alleges a Fourth Amendment false arrest claim based on *Franks v. Delaware*, 438 U.S. 154 (1978) and a conspiracy claim based on *Turner v. Upton Co.*, 915 F.2d 133 (5th Cir. 1990) for alleged violations of the Fourth and Fourteenth Amendments. *See* ECF No. 92 ¶¶ 146–95 (Count I); 196–202 (Count II).² The Supreme Court has

---

² The Court previously dismissed the conspiracy claim to the extent Plaintiffs premised it on the Sixth and Fourteenth Amendments. *See* ECF No. 48 at 72. Through the motion for leave to amend, Plaintiffs provided no explanation for keeping or expanding upon the dismissed aspects of the conspiracy claim. *See* ECF No. 76. Although the Magistrate Judge granted Plaintiffs leave to file the proposed amended complaint attached to the motion for leave, such leave does not permit Plaintiffs to revive previously dismissed claims in this case absent a direct explanation for maintaining a previously dismissed claim. Thus, the Court will not address the conspiracy claim premised on the Fourteenth Amendment as presented in the Third Amended Complaint. It has previously dismissed such claim, and Plaintiffs have not provided any basis for reviving it. Plaintiffs premised the addition of the two new Defendants on alleged

7

held "that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. Naturally, a person can file "suit immediately upon his false arrest," even though the limitations period does "not begin to run until" the arrestee "became detained pursuant to legal process," because a person is "injured and suffer[s] damages at the moment of his arrest, and [is] entitled to bring suit at that time." *Id*. at 390 n.3.

Here, Plaintiffs made consistent allegations regarding Sharp through their first three complaints. These complaints conclusively reveal that Plaintiffs knew enough to characterize Sharp as a co-conspirator as of the filing of the original complaint on October 12, 2023. Most importantly, Plaintiffs knew exactly when they were detained pursuant to legal process, and their original pleading identifies the date of their arrest as February 25, 2022. The pleading conclusively establishes that date as the date Plaintiffs' Fourth Amendment claim accrued. "Absent tolling, the limitations period runs from the moment" the Fourth Amendment accrued. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015). Thus, absent "some basis for tolling," the claims against Sharp may be subject to dismissal. *Frame*, 657 F.3d at 240; *accord Jenkins*, 151 F.4th at 747. And the basis for tolling must be found through factually plausible allegations of the operative pleading. *See King-White*, 803 F.3d at 758; *Moon v. City of El Paso*, 906 F.3d 352, 358–59 (5th Cir. 2018). Plaintiffs "bear[] the burden of demonstrating the basis for tolling the limitations period." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 380 (5th Cir. 2019)

In cases where federal courts borrow state statutes of limitation, the tolling principles of the state primarily guide the federal courts. *Jenkins*, 151 F.4th at 749. The "'borrowing' logically

---

violations of the Fourth Amendment. *See* ECF No. 76 at 2. Plaintiffs provided five reasons for seeking leave to amend—none of which relate to reviving any dismissed claim or asserting a Fourteenth Amendment claim against any new defendant. *See*, *generally*, *id*.

include[s] rules of tolling," unless the state rule is inconsistent with federal law, i.e., "the Constitution and laws of the United States." *Bd. of Regents of Univ. of State of N Y. v. Tomanio*, 446 U.S. 478, 485 (1980). The Fifth Circuit has found "no basis for holding, that the Texas tolling laws are inconsistent with policies underlying § 1983," and thus they may apply in § 1983 cases. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998).

Plaintiffs do not rely on any Texas tolling principle per se, but their arguments suggest potential applicability of two tolling principles, which the Court will briefly touch upon in an abundance of caution. Texas permits "tolling based on fraudulent concealment and the 'discovery rule.'" *King-White*, 803 F.3d at 764; *accord Moon*, 906 F.3d at 358–59. Plaintiffs likely do not rely on these principles because of their limited applicability to situations not presented in this case.

For instance, fraudulent concealment under Texas law estops defendants "from relying on limitations if they are 'under a duty to make disclosure but fraudulently conceal[] the existence of a cause of action from the party to whom it belongs.'" *King-White*, 803 F.3d at 764 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)). Estoppel ends, however, "when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Id*. (quoting *Borderlon*, 661 S.W.2d at 909). Because nothing in the pleadings of this case suggests that any defendant "actively concealed the existence of any causes of action," and because Plaintiffs had sufficient knowledge of the relevant facts to end any estoppel when they filed their original pleading, "fraudulent concealment is of no help to Plaintiffs." *See id*. at 764–65.

Likewise, the Texas discovery rule is of no help to Plaintiffs. Under Texas law, the judicially crafted rule provides a very limited exception to statutes of limitation which "defers accrual of the cause of action if 'the nature of the injury is inherently undiscoverable and evidence of injury

9

is objectively verifiable.'" *Id*. at 764 (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998)). Because "Plaintiffs' allegations are insufficient to show that their injury was 'inherently undiscoverable' as a matter of state law," any reliance on the Texas discovery rule necessarily fails. *See id*.

Regardless of the inapplicability of these state principles, Plaintiffs do seek to toll limitations on grounds of delayed discovery of pertinent information as to Sharp's role in the events leading to this litigation. Characterizing it as "the federal discovery rule," Plaintiffs argue that limitations period only begins when they obtained "sufficient information to know that [they have] been injured." ECF No. 103 at 5. But as *King-White* recognized, this characterization does no more than argue "for application of the federal accrual rule." *See* 803 F.3d at 764. As in *King-White*, this Court has applied the federal accrual rule, and from its application, finds that Plaintiffs' operative pleading conclusively shows that their Fourth Amendment claims accrued in February 2022. While there are cases mentioning knowing the identity of the defendant, *Jenkins* definitively holds that accrual is not contingent on the plaintiff knowing the identity of each defendant. *See* 151 F.4th at 748 n.11. In this case, furthermore, the pleadings do not show any basis for tolling under Texas law.

To the extent Plaintiffs' reliance on the federal discovery rule presents an intent to argue for the applicability of equitable tolling, the Court recognizes that "Texas courts sparingly apply equitable tolling." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam) (citing Hand v. Stevens Transport, Inc., 83 S.W.3d 286, 293 (Tex. App. – Dallas 2002, no pet.)). The Texas Supreme Court agrees while further emphasizing that, even when appliable, equitable tolling has a "limited scope." *Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 628 (Tex. 2023). The Texas Supreme Court, furthermore, has recognized that equitable tolling is simply not available when "it is 'inconsistent with the text of [a] relevant statute.'" *Id.* at 627 (quoting *Young*

10

*v. United States*, 535 U.S. 43, 49 (2002)). Under Texas law, equitable tolling is "available only in carefully circumscribed contexts." *Id*. at 632.

For instance, while Texas permits equitable tolling "in cases involving misnomer—where the petition merely misnames the correct defendant—'limitations is tolled and a subsequent amendment of the petition relates back to the date of the original petition,'" even then, "tolling is generally not available in cases of misidentification, which involve suing the wrong defendant with a name similar to the one against which suit was intended." *Id*. at 628 (quoting *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4–5 (Tex. 1990)). The Texas Supreme Court has also recognized that the United States Supreme Court also sparingly extends equitable tolling to private litigants when the plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where [the [plaintiff] has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id*. at 631 (quoting *Irwin v. Dep't of Vet. Affairs*, 498 U.S. 89, 96 (1990)).

Under equitable tolling applicable in the habeas context, the United States Supreme Court has held that "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016) (quoting in *Holland v. Florida*, 560 U.S. 631, 649 (2010)). While the Supreme Court would not commit to applying equitable tolling in a non-habeas context or to whether the test might differ in such a context, it applied that two-pronged test when no party argued for a different test. *Id*. at 257 & n.2. Despite the statements in *Menominee*, the Supreme Court has applied the *Holland* test in non-habeas cases; the test traces back to at least *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); and the Fifth Circuit appears to have adopted the test in non-habeas cases. *See Gomez v. Glob. Precision Sys., LLC*, 636 F. Supp.

11

3d 746, 758 n.14 (W.D. Tex. 2022).

Assuming but not deciding that such equitable tolling might be available in a § 1983 action, the Court finds no basis in the pleadings for such tolling. Equitable tolling requires both diligence and "circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id*. at 257. While the Fifth Circuit has "opined that equitable tolling can excuse an untimely filing" when the plaintiffs are unaware "of the facts giving rise to the claim because of the defendant's intentional concealment of them," *Melgar*, 931 F.3d at 380, the pleadings show that Plaintiffs were aware of the facts giving rise to claims against Sharp. "Courts grant requests for equitable tolling most frequently where 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)). Plaintiffs merely contend that they lacked knowledge of the full extent of Sharp's involvement. Even without the alleged newly discovered information about Sharp's involvement, Plaintiffs had enough information to describe her as a co-conspirator in the original pleading. No extraordinary circumstance prevented Plaintiffs from timely asserting the claims against Sharp.

Although the above-discussed tolling provisions provide no relief to the statute of limitations on the facts of this case, the claims against Sharp arose through amendment thus presenting a possibility that Fed. R. Civ. P. 15(c) provides a basis for overcoming the apparent untimeliness of the claims asserted against Sharp. Rule 15(c) provides circumstances for finding when an "amendment relates back to the date of the original pleading." Rule "15(c) is a procedural provision to allow a party to amend an operative pleading despite an applicable statute of limitations in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future, related claims." *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). While the "relation back doctrine . . . has the ultimate effect of

'tolling' limitations," it is "purely procedural and is thus governed by federal law." *Id*. at 1367 n.4.

One set of circumstances concerns amendments that change "the party or the naming of the party against whom a claim is asserted." *See* Fed. R. Civ. P. 15(c)(1)(C). "Rule 15(c)(1)(C) governs relation back where an amended complaint adds a party to an existing suit." *Allen v. Hays*, 65 F.4th 736, 751 (5th Cir. 2023). "This rule 'is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification.'" *Balle v. Nueces Cnty.*, 952 F.3d 552, 557 (5th Cir. 2017) (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998)).

For an amendment to relate back under this provision, there first must be satisfaction of Rule 15(c)(1)(B), which requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Subparagraph (B) is not in dispute here.[3] But even so, two other circumstances may prevent an amendment from relating back and both circumstances are viewed during the time "within the period provided by Rule 4(m) for serving the summons and complaint." *See* Fed. R. Civ. P. 15(c)(1)(C). In general, the time-period set out in Rule 4(m) is "90 days after the complaint is filed." And within that time-period, the party to be added by amendment must have (i) "received such notice of the action" that "defending on the merits" will not prejudice such party, and (ii) known "or should have known that the action would have been brought against" such party, "but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(i) and (ii).

---

[3] Plaintiffs argue that their amendment should relate back under Fed. R. Civ. P. 15(c)(1)(B) without regard to Rule 15(c)(1)(C). *See* ECF No. 103 at 6–7. But that cannot be right. Because satisfaction of Rule 15(c)(1)(B) is a prerequisite to applying the other relation-back requirements of Rule 15(c)(1)(C), Plaintiffs' view would make the other requirements immaterial. Unless Rule 15(c)(1)(A) applies, a matter not argued here, Rule 15(c)(1)(C) applies whenever an "amendment changes the party or the naming of the party against whom a claim is asserted." Further, the Fifth Circuit has held that in the context of § 1983 claims, "the Texas law providing the applicable limitations period does not allow relation back within the meaning of Rule 15(c)(1)(A)." *Balle*, 952 F.3d at 557. Thus, Rule 15(c)(1)(C) is the only way for the Third Amended Complaint to relate back to the date of the original complaint in this action.

As already mentioned, Plaintiffs have the burden to demonstrate that their amended complaint relates back even though Sharp has the burden to establish limitations as a defense. *See Al-Dahir v. FBI*, 454 F. App'x 238, 242 (5th Cir. 2011) (per curiam). Furthermore, because the requirements of Rule 15(c)(1)(C) are stated in the conjunctive, a failure to satisfy either subparagraph means that the amendment does not relate back. *See Marksbury v. Elder*, No. 5:09-CV-24-REW, 2011 WL 1832883, at *6 (E.D. Ky. May 12, 2011) (recognizing that use of the conjunctive "and" between subparagraphs (i) and (ii) requires both requirements to be met). This Court finds *Marksbury* persuasive, instructive, and consistent with binding precedents.

The Court first considers the second requirement. The relevant "question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553–54 (2010). Stated differently, this question is not whether Plaintiffs "knew or should have known the identity of [Sharp] as the proper defendant, but whether [Sharp] knew or should have known that [she] would have been named as a defendant but for an error." *Id*. at 548. In other words, "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Id*. Because "Rule 15(c)(1)(C) speaks generally of an amendment to a 'pleading' that changes 'the party against whom a claim is asserted,'" it "is not limited to the circumstance of a plaintiff filing an amended complaint seeking to bring in a new defendant." *Id*. at 548 n.3. But, regardless of specific circumstances, the lessons from *Krupski* and other cases apply generally to Rule 15(c)(1)(C) amendments. *See id*.

The above does not mean that information known by plaintiffs is completely irrelevant in all circumstances concerning relationship back. *Krupski* provides the following guidance:

> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper

14

> party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

560 U.S. at 548–49 (citations omitted). While Rule 15(c)(1)(C) permits courts "to examine a plaintiff's conduct during the Rule 4(m) period," the focus must remain on the relevant inquiry noted above regarding what the prospective defendant reasonably should have understood. *Id*. at 553–54. "To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity,' a court may consider the conduct." *Id*. at 554 (citation omitted). Otherwise, a "plaintiff's postfiling conduct is . . . immaterial to the question whether an amended complaint relates back." *Id*.

In *Krupski*, the Supreme Court also addressed an argument regarding when "the plaintiff has made a deliberate choice to sue one party over another," and agreed "that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id*. at 549. The Supreme Court, however, disagreed "that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake." *Id*. Further, the Supreme Court elaborated:

> The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule

15

15(c)(1)(C)(ii) has been satisfied.

*Id*.

Plaintiffs maintain that the omission of Sharp as a defendant is simply a "deliberate but mistaken choice" permitted under *Krupski*. ECF No. 103 at 3. But courts have narrowly construed the Rule 15(c)(1)(C)(ii) mistake clause, "generally extending [it] to errors 'such as misnomer and misidentification.'" *Allen*, 65 F.4th at 751 (quoting *Quinn v. Guerrero*, 863 F.3d 353, 363 (5th Cir. 2017)). It does not apply when "plaintiffs merely declined to sue the parties despite being aware of their existence." *Id*.

Here, although Plaintiffs knew Sharp's identity when they filed their original complaint, they did not name her as a defendant even though they characterized her as a co-conspirator. While identity is not an issue with respect to Sharp, it remains important to note that "a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the proper party's identity' within the meaning of Rule 15(c)(1)(C)(ii)." *Marksbury*, 2011 WL 1832883, at *7; *accord Ford v. Anderson Cnty.*, 102 F.4th 292, 319 (5th Cir. 2024) ("Rule 15(c) is intended to correct a mistake concerning the identity of a defendant; it does not permit adding a new defendant when the plaintiff did not originally know of that defendant's identity."). The Fifth Circuit "has clearly held that 'an amendment to substitute a named party for a John Doe does not relate back under Rule 15(c)." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 471 (5th Cir. 2019) (quoting *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282–83 (5th Cir. 2008)). The Fifth Circuit has agreed that "failing to identify individual defendants cannot be characterized as a mistake." *Jacobsen*, 133 F.3d at 321; *accord Winzer*, 916 F.3d at 471. When a plaintiff names "a 'John Doe' defendant, there [is] no 'mistake' in identifying the correct defendant; rather, the problem [is] not being able to identify that defendant." *Jacobsen*, 133 F.3d at 321; *accord Balle*, 952 F.3d at 557.

Like the circumstances in *Marksbury*, Plaintiffs' original complaint focused on persons

16

"indisputably involved" in the events leading to this case. Not only did Plaintiffs know Sharp's identity, but they even characterized her as a co-conspirator while not naming her as a defendant. Based on the original pleading, as well as all amendments prior to the Third Amended Complaint, Sharp, like the newly added defendant in *Marksbury*, "quite reasonably would have received this as an intentional election against making claims concerning [her] involvement." *See* 2011 WL 1832883, at *7. As in *Marksbury*, Plaintiffs here "did not name fictitious additional defendants or indicate an intention to discovery and sue more related persons." *See id*. Under such circumstances, Sharp "had no reason to think [she] would have been named 'but for an error.'" *Id*. (quoting *Krupski*, 560 U.S. at 548). Accordingly, Rule 15(c)(1)(C)(ii) does not permit the amended complaint to relate back to when Plaintiffs filed their initial pleading. Adding "a new defendant based on facts . . . learned during discovery . . . is not a case of 'a mistake concerning the proper party's identity." *Ford*, 102 F.4th at 319.

For this case, the Court finds that Rule 15(c)(1)(C)(ii) precludes the amendment from relating back. Because Plaintiffs have not carried their burden to show satisfaction of the mistake clause of Rule 15(c)(1)(C)(ii), the amendment in this case does not relate back to the date of the original pleading. "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Krupski*, 560 U.S. at 552. Although Plaintiffs attempt to paint a picture of mistaken identity, they continue to pursue claims against the originally named defendants. They "made no mistake in suing" the originally named defendants instead of Sharp, they "simply now seek[] to expand the scope of the case by adding a new defendant," which "is beyond the Rule 15 relation-back principle." *Marksbury*, 2011 WL 1832883, at *7.

A review of the cited cases reveals a consistently important factor in the mistake analysis

17

when a new defendant is added—whether the new defendant replaced the originally named defendant or was simply added as an additional defendant for the same claim. Similarly, when an amendment does not bring in a new defendant but rather switches a claim to an already existing defendant, this important factor looks to whether the switch replaced the originally named defendant or whether an additional defendant was simply added to a claim while maintaining the originally named defendant. Replacement of the originally named defendant, rather than simply joining a defendant with an already existing defendant, appears key to the mistake analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss (ECF No. 95) filed by Defendant Rosemary Sharp. The claims asserted against her are **DISMISSED** as untimely under the applicable statute of limitations. **The Clerk of Court shall terminate her as a party in this litigation.**

**IT is so ORDERED this 13th day of November 2025.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**